McBRIDE, Judge.
Plaintiffs own the brick veneer house designated as No. 1728 Aycock Street, Arabi, in the Parish of St. Bernard, just below New Orleans, which had been erected for them by Gerald L. Schroeder, as general contractor, under plans and specifications prepared by him. The construction was supervised by J. J. Lagarde, architect and building expert for the building and loan association which financed the construction for plaintiffs. The building was completed, and upon being approved by Lagarde, plaintiffs accepted the work and moved into the house and lived there for five months before the incident hereinafter mentioned took place.
On the night of May 19, 1955, whilst plaintiffs and their family were away from their home, a heavy downpour of rain occurred and lasted for about six hours. On returning the morning of May 20, 1955,. plaintiffs noticed upon entering the house that the oak-wood sections or blocks of the floors were buckled. Examinations revealed water standing in the rear bedrooms and the floors in the other portions of the house, with the exception of the bathroom,, were wet. The moisture caused the wooden, blocks to buckle and distort extensively,, making it necessary to remove and replace the entire floors.
Plaintiffs bring this suit against Schroeder and his surety seeking to recover $1,-295.68, charging that they sustained damage in such amount due to the improper-caulking of the bricks at the openings between the bottom plate and the concrete and to an opening in the mortar joints which permitted the rain to penetrate the exterior of the house and flood the floors.. Defendants deny there were any defects-in the premises or in the contractor’s work when approved by the expert of the building and loan association and when accepted by plaintiffs.
■ From a judgment dismissing the suit rendered after a trial of the case on the merits, plaintiffs have perfected this appeal.
During the five months plaintiffs lived-in their home before the incident above-mentioned, there were many severe rainfalls which caused no damage to the prem *527 ises. The U. S. Weather Bureau Climatological Report shows that on the date in question there was a severe rainstorm, and the record reflects that this particular rainfall caused $26,000 damage in the same locality.
The only expert witness called by plaintiffs was W. E. Cooke, an employee of Shilstone Testing Laboratory who described himself as a “testing engineer” and stated that he has been with his present employer for twenty years. Cooke has a high-school education; he admits he is not an architect, civil engineer, mechanical or electrical engineer and has had no experience as a building contractor. His duty is to test the tensile strength and absorption qualities of materials and whatever experience he has was acquired in a practical way.
On May 24, 1955, Cooke made a survey of plaintiffs’ damages. According to his report, an examination of the interior walls and ceilings revealed that no water had entered the building from those sources. He states several of the screens under the eaves were removed and these areas were found to be dry. He also reported that an examination of the exterior brick walls revealed no major defects to which the damage could be attributed. However, he thought bricks in a ledge of •one of the rear windows were obviously not properly caulked as indicated by openings in the mortar joints. Several bricks were removed from the wall exposing the •concrete shelf and celotex and these Cooke found to be dry. At this point Cooke had no theory as to how the water might have entered plaintiffs’ premises. On June 14, 1955, Cooke’s office was advised that the wooden floor had been removed, so Cooke returned to the scene and conducted an investigation of the concrete slab upon which the building was erected for the purpose of determining whether the slab was cracked or damaged, as he thought the water could have entered the house if such conditions existed. No defects in the slab were found.
Cooke claims he then made an examination of the brickwork in the rear of the house and found voids in the caulking in a rear window. In order to determine whether it was possible for water to enter the house through these voids, Cooke states he simulated a driving rain by spraying the bricks in the area about the window with water from a hose with an adjustable nozzle for a period of five minutes, and that during the spraying process he observed the interior of the house directly behind the window and saw that water began to seep in and then spread out across the floor immediately beneath the window. He estimates that two cubic inches of water entered the house during the period of spraying.
Plaintiffs contend that the lack of caulking in the brickwork about the rear window discovered by Cooke is a latent defect in the construction of the building and that the said defect was the source and proximate cause of their damage. That contention is based solely on Cooke’s testimony.
On the other hand, both Schroeder and Lagarde, the latter being a registered architect who has been practicing since 1910, deny there were any defects in the building when the job was formally accepted by the owner. Lagarde points out that he made a full and complete inspection before giving final approval of the work done under the building contract. He maintains that even though no imperfections existed in the work, a number of other things could possibly be responsible for the presence of the water in the house. He states it rained for four or five days, with about eight inches of rain during one twenty-four hour period, and that the rainwater could have accumulated and flooded plaintiffs’ lot to such an- extent as to cover the concrete slab, which is only six inches high, and penetrate through the flooring. Much credence must be accorded to this statement of Lagarde because the evidence shows that officials of the Parish of St. Bernard found it imperative to install additional drainage *528 facilities in the area to prevent further flooding due to the heavy rain of May 19, 1955.
Lagarde also called attention to the fact that a large oak tree stands on the adjoining property and overhangs plaintiffs’ lot, and his opinion was that leaves from the tree had been blown by the wind and could have accumulated in the guttering which had the effect of clogging up the downpipe, causing water from the roof to overflow the gutter and then fall to the plywood and from the plywood run back into the space between the brick veneer and the wooden-frame wall and seep into the house. The evidence in the case shows that there was an accumulation of leaves in the tin gutter of the house at the time of the rainfall in question.
It was also testified to by Lagarde that when he visited the damaged premises upon being summoned by plaintiffs on May 24, 1955, he noticed that only a rear room and a small hall were wet, and no complaint was made by either of the plaintiffs that other portions of the house had sustained damage. The witness also declares there is no indication of anything being wrong with the rear window which Cooke claims is defective.
Schroeder also denies that any of the windows were improperly caulked.
The trial judge, after hearing the evidence, was of the opinion that plaintiffs had not proven a case of liability against the defendants by a preponderance of the evidence, and we must agree with that conclusion.
There is no showing that the spray test performed by Cooke would have the same effect respecting the entry of water into the house as the rainfall during the night of May 19. It occurs to us that it is quite possible that the water emanating from the hose had greater force than the rainfall, but the record is silent on this important detail. Moreover, it seems strange that never before during plaintiffs’ occupancy of the house had rainwater ever entered in the vicinity of the rear window or elsewhere.
Taking Cooke’s testimony in a light most favorable to plaintiffs and conceding that two cubic inches of water did enter through uncaulked bricks into the rear room during the five minutes the hose was played on the brickwork, it is inconceivable that during the six-hour rainfall enough water could have flowed into the premises to actually flood the five or six rooms plaintiffs claim were damaged. Rather, we think that plaintiffs’ damages accrued from other causes, perhaps from those mentioned by Lagarde.
Plaintiffs by law carried the burden of proving that their loss was sustained because of the defective work of the contractor, and after reading the evidence adduced by them, we think the proof falls far short of discharging such burden.
There is no error in the judgment appealed from, and it is affirmed.
Affirmed.
JANVIER and REGAN, JJ., absent.